*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DONNA ANDERSON,

*Defendant-Appellant.*

> No. 07-5037

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 05-00092—Curtis L. Collier, Chief District Judge.

Argued: March 21, 2008

Decided and Filed: May 27, 2008

Before: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Bryan H. Hoss, DAVIS & HOSS, Chattanooga, Tennessee, for Appellant. Scott A. Winne, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Bryan H. Hoss, DAVIS & HOSS, Chattanooga, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which GRIFFIN, J., joined. BATCHELDER, J. (p. 11), delivered a separate concurring opinion.

---

## OPINION

---

KENNEDY, Circuit Judge. Ms. Donna Anderson appeals her sentence imposed pursuant to her guilty plea for money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (2006). She alleges that her sentence is procedurally unreasonable because the district court incorrectly calculated her recommended Sentencing Guidelines range in at least three ways. First, she contends that the district court improperly used U.S.S.G. § 2S1.1(a)(1), instead of § 2S1.1(a)(2), to determine her base offense level. Section 2S1.1(a)(1) calculates the base offense level based on the Guidelines section applicable to the underlying criminal conduct from which the laundered funds were derived. Subsection (a)(1) can only be used, however, when two conditions, which Ms. Anderson asserts are absent, are met, namely when the offender can be held responsible for the underlying offense and when the underlying offense's Guidelines recommendation can be calculated. Even if subsection (a)(1) was the correct subsection to apply, however, Ms. Anderson asserts that the district court

1

improperly withheld a two-level safety valve reduction under § 2D1.1(b)(7). Lastly, Ms. Anderson avers that if use of subsection (a)(1) was proper, then the two-level enhancement under § 2S1.1(b)(2)(B) was improper. The government concedes that the district court should have considered a two-level safety valve reduction, but otherwise opposes Ms. Anderson's arguments. Additionally, the government contends that the district court improperly granted Ms. Anderson a four-level reduction for a mitigating role pursuant to § 3B1.2(a). The government also suggests that notwithstanding these errors, Ms. Anderson should not be resentenced because the totality of the errors was harmless to the defendant. Because we find that, while use of § 2S1.1(a)(1) was proper, Ms. Anderson should have been considered for a two-level safety valve reduction pursuant to § 2D1.1(b)(7) and should not have been granted a four-level minor participant reduction pursuant to § 3B1.2(a), and that these errors were not harmless, we VACATE the district court's sentence and REMAND for resentencing consistent with this opinion.

## BACKGROUND

On December 7, 2006, Ms. Donna Anderson was sentenced to a term of forty-eight months in prison for money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), to which she had pleaded guilty. Ms. Anderson had been indicted for conspiracy to distribute five hundred or more grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), making a false statement in violation of 18 U.S.C. § 1001, laundering money with intent to promote the sale of illegal drugs, from which the money was obtained, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and laundering money that she knew represented the proceeds of illegal activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Pursuant to a plea bargain, she pleaded guilty to the last charge, count twenty-three in the indictment, and the government agreed to dismiss the remaining charges.

Ms. Anderson's criminal involvement stems from the criminal conduct of her son, Dennis Anderson, a methamphetamine dealer. Dennis Anderson had been conducting a methamphetamine drug operation that involved individuals in the states of Georgia and Tennessee from at least January 2005 through September 1, 2005. During this time, he was dealing in at least five pounds of methamphetamine per week. For the thirty-five weeks of the conspiracy, then, Dennis Anderson purchased and/or sold roughly one-hundred-seventy-five pounds, or over seventy-nine and a quarter kilograms, of methamphetamine.

Ms. Anderson was aware that her son was a drug dealer, and she helped him conceal his illegal proceeds. Dennis Anderson gave Ms. Anderson $25,000 in cash, three boxed sets of coins, and two digital cameras to conceal. Ms. Anderson then had Ms. Alison Weathers, her sister, place these items in Ms. Weathers's safe deposit box. The purpose of this was to conceal that illegal activity, namely methamphetamine distribution, was the source of the items.

Ms. Anderson also assisted her son in concealing the fact that he had purchased a Lincoln Navigator for $8,500 in cash. Ms. Anderson had applied for the title to the vehicle and had the vehicle registered in her name.

Ms. Anderson also assisted her son in his drug trade. Mr. James Hixson, an officer in the Chattanooga Police Department assigned to the DEA task force, testified at the first sentencing hearing that two of Dennis Anderson's co-conspirators confirmed Ms. Anderson's participation in the conspiracy. Mr. Luke Wilson, one co-conspirator, had stated that Dennis Anderson had used Ms. Anderson's house, which was Dennis Anderson's primary residence, while Ms. Anderson was present to conduct his methamphetamine business. Mr. Wilson also stated that when Dennis Anderson would receive shipments of drugs to Ms. Anderson's house, he would occasionally direct Ms. Anderson to retrieve money so that he could pay for the narcotics, which were in plain view.

Officer Hixson further testified that Mr. Clay Moerland, another co-conspirator, had also confirmed Ms. Anderson's assistance to Dennis Anderson. On one occasion, Mr. Moerland and Dennis Anderson had counted roughly $50-$60,000 in drug money and Dennis Anderson called Ms. Anderson to come pick up the cash, which she did. Mr. Moerland also stated that Ms. Anderson would occasionally deliver up to $20,000 to Dennis Anderson so that he could purchase drugs. Lastly, Mr. Moerland asserted that Ms. Anderson would occasionally be given guns to store by Dennis Anderson. When police searched a storage unit rented by Ms. Anderson, they discovered three stolen rifles.

In sentencing Ms. Anderson, the district court determined that U.S.S.G. § 2S1.1(a)(1), and not (a)(2), provided the appropriate test by which to calculate Ms. Anderson's base level. This conclusion was based primarily on the district court's determination that Ms. Anderson "must be held responsible for what [she] did t[o] further[] the drug-trafficking activities." J.A. at 154-55. Section 2S1.1(a)(1) was appropriate, it stated, because it determines the base level for the money laundering offense by reference to the offense level for the underlying conduct, and therefore takes account of the defendant's responsibility for the underlying criminal activity.

The district court, pursuant to § 2S1.1(a)(1), referenced § 2D1.1 to obtain Ms. Anderson's base offense level. Section 2D1.1 determines offense levels based on the amount of narcotics for which the defendant is responsible. To determine that quantity of narcotics, the district court asked Officer Hixson to estimate "the minimal amount of drugs which the defendant could reasonably have foreseen that Denn[is] Anderson was involved with over the time period that [Officer Hixson] believed [Ms. Anderson] was involved." J.A. at 116. Officer Hixson testified that the "minimum figure would be an estimated 3 pounds." J.A. at 116. The district court found by a preponderance of the evidence that this figure was a conservative estimate of the amount of methamphetamine that Ms. Anderson could have reasonably foreseen based upon her participation in the drug conspiracy. Based upon this figure, the district court found, from the Drug Quantity Table in § 2D1.1, that the base level offense was thirty-two, which is applicable when the defendant is responsible for 500 grams to 1.5 kilograms of methamphetamine.

The district court determined a few adjustments should apply to Ms. Anderson's offense level. As a general matter, it found that the specific offense characteristics from § 2S1.1 should be used, rather than any specific offense characteristics from § 2D1.1. The district court, therefore, found that Ms. Anderson's offense level should be increased by two, bringing the offense level to thirty-four, pursuant to § 2S1.1(b)(2)(B). The district court then reduced the offense level by four, pursuant to § 3B1.2(a), because it found that Ms. Anderson played a minimal role in the offense. The district court further reduced the offense level by three, pursuant to § 3E1.1, for Ms. Anderson's acceptance of responsibility. The adjusted offense level, therefore, was twenty-five.

The district court then determined that a departure was warranted. The government had made a § 5K1.1 motion based upon Ms. Anderson's substantial assistance to the government. The district court granted the government's motion for a downward departure, and therefore reduced Ms. Anderson's offense level from twenty-five to twenty-two. The offense level combined with a Criminal History Category of I resulted in a Guidelines recommendation of a sentence between forty-one to fifty-one months. The district court found that, based upon the Guidelines recommendation and the sentencing factors in 18 U.S.C. § 3553(a), a sufficient sentence for Ms. Anderson was forty-eight months in prison.

## ANALYSIS

Ms. Anderson challenges the procedural reasonableness of her sentence. She argues that the district court incorrectly calculated the Guidelines' recommendation because § 2S1.1(a)(1), rather than (a)(2), should have been used to determine the base offense level. In the alternative, she asserts

that if the use of § 2S1.1(a)(2) was proper, then the district court (1) should have applied a two-level safety valve reduction pursuant to 2D1.1(b)(7); and (2) should not have applied a two-level enhancement pursuant to § 2S1.1(b)(2)(B).  Due to these alleged errors, Ms. Anderson requests we remand her case to the district court for resentencing.

The government generally opposes Ms. Anderson's request for resentencing.  The government contends that the district court properly applied § 2S1.1(a)(1), and correctly increased Ms. Anderson's sentence pursuant to § 2S1.1(b)(2)(B).  While the government agrees that Ms. Anderson should have been considered for a safety valve reduction, it also avers that Ms. Anderson incorrectly received a four-level reduction for a mitigating role.  The government further suggests that any error committed by the district court was harmless.

A sentence will be found procedurally unreasonable when the district court failed to accurately calculate the sentencing recommendation of the United States Sentencing Guidelines.  *See United States v. Hazelwood*, 398 F.3d 792, 800-01 (6th Cir. 2005); *accord Gall v. United States*, 128 S. Ct. 586, 596 (2007).  We conduct de novo review of a district court's legal conclusions regarding the Guidelines.  *United States v. Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007).  The district court's factual findings are reviewed for clear error.  *Id.*  Generally a remand will be warranted when the district court committed an error in computing the Guidelines' recommended sentencing range.  *Hazelwood*, 398 F.3d at 801.  A remand will not be required, and an error deemed harmless, however, when "we are certain that . . . any such error 'did not affect the district court's selection of the sentence imposed.' "  *Hazelwood*, 398 F.3d at 801 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

## I. Application of § 2S1.1(a)(1) was Proper

Ms. Anderson challenges the district court's determination of her Guidelines sentencing range based on § 2S1.1(a)(1).  Subsection (a)(1) determines the base level of the Guidelines range pursuant to the section of the Guidelines on which the underlying offense would be based.  In this case, for instance, Ms. Anderson was laundering funds for a methamphetamine dealer.  The base level for the underlying offense of dealing methamphetamine, therefore, would be determined by § 2D1.1(a).  Before using the base level of the underlying offense, however, subsection (a)(1) first requires that two conditions be met: (A) that the defendant is responsible for the underlying offense, either because she committed it or it is relevant conduct, as defined in § 1B1.3; and (B) that the base level of the underlying offense be determinable.  We find that the district court properly determined that Ms. Anderson was responsible for participating in the drug conspiracy, and that the drug quantity for which Ms. Anderson should be held responsible was ascertainable.

## A. Ms. Anderson Participated in the Drug Conspiracy

Ms. Anderson contends that she cannot be held responsible for the underlying offense, and therefore the first condition for application of subsection (a)(1) is not met.  Ms. Anderson points to a number of facts to support the proposition that she is solely a third-party money launderer.  She asserts that she only gave her son's drug money to her sister to put in a safety deposit box, and that this is not direct involvement in the drug conspiracy.  She also alleges that while her son's Lincoln Navigator was titled in her name, the proof only established that she applied for a lost title application, which is more like a third-party money launder than if she had participated in the actual purchase of the vehicle.  Lastly, she contends that the drug conspiracy is not attributable to her as relevant conduct because her conduct was "incidental" to her son's drug dealing, she only had general knowledge about her son's drug dealing, and she was never directly involved in the drug transactions.

While we express no opinion on whether the above facts alone would constitute enough to attribute the drug conspiracy to Ms. Anderson as relevant conduct, we find that other facts in the record upon which the district court relied demonstrate that the district court did not err by finding that Ms. Anderson was more involved in the drug conspiracy. There was evidence that Dennis Anderson occasionally used Ms. Anderson's house, while she was present, to conduct his methamphetamine operation. This included receiving shipments of narcotics to the house, during which Ms. Anderson would sometimes retrieve money for Dennis Anderson to pay for the shipment. Ms. Anderson also occasionally acted as a courier of Dennis Anderson's drug proceeds, which included, on one occasion, picking up sums of money, around $50,000, as well as delivering sums of money, usually around $20,000, to Dennis Anderson so he could purchase drugs. Lastly, Ms. Anderson would accept guns from Dennis Anderson to store for him.

These facts are enough to establish that Ms. Anderson was a participant in the drug conspiracy. There is no doubt that a conspiracy existed here between Dennis Anderson and his associates. We do not understand Ms. Anderson to be challenging the existence of the conspiracy, only challenging her participation in the existing conspiracy. When a conspiracy is proven, however, "evidence connecting a particular defendant to the conspiracy 'need only be slight.' " *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999) (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)). Given that Ms. Anderson was delivering large quantities of money to Dennis Anderson to pay for narcotics while the drugs were in plain view, that she permitted use of her house for drug transactions, and that she would accept and store weapons for Dennis Anderson, we hold that the district court was correct in finding that a preponderance of the evidence established that Ms. Anderson was aware of the conspiracy and actively participated in it. *See United States v. Hodges*, 935 F.2d 766, 772 (6th Cir. 1991). While there is no evidence that Ms. Anderson personally sold narcotics, her conduct did further the drug conspiracy to sell the narcotics and she was, therefore, responsible for the drug conspiracy. *See, e.g.*, *United States v. Conrad*, 507 F.3d 424, 429-30 (6th Cir. 2007) (finding sufficient evidence for participation in a drug conspiracy when defendant had provided her house for use as a delivery location for drugs and had lied to investigators regarding ownership of certain monies); *United States v. Johnson*, 450 F.3d 366, 372 (8th Cir. 2006) (finding sufficient evidence for a defendant to be convicted as a participant in a drug conspiracy when he had ridden in a "chase vehicle" behind drug couriers, and had driven one of the drug couriers home after the drugs were delivered); *United States v. Cruz*, 910 F.2d 1072, 1083 (3d Cir. 1990) (finding sufficient evidence for a drug conspiracy conviction where there was proof that the defendant drove another person to a drug distributor so that the other person can purchase drugs, that the defendant remained present for the sale, that, after a search of one drug house, the defendant drove the distributor to another drug house, and that the defendant failed to stop when the police attempted to make a traffic stop of the defendant).[1] The first prong of § 2S1.1(a)(1), that the defendant be responsible for the underlying offense from which the laundered funds were derived, therefore, was met in this case.

---

[1] To the extent Ms. Anderson's attempts to diminish her role in the conspiracy can be taken as an implicit rejection of the facts recited above, that argument is foreclosed by her failure to object to the factual recitations in the PSR. Fed. R. Crim. P. 32(i)(3)(A). Additionally, Ms. Anderson's sentencing hearing was continued for three months after Officer Hixson's testimony regarding Ms. Anderson's participation in the drug conspiracy, and Ms. Anderson did not introduce any contradictory evidence at the continuation of the hearing.

Ms. Anderson wants to characterize her conduct as only "incidental" to the conspiracy and primarily points to the facts on which the money laundering charge was based. This characterization, however, is inaccurate because while her conduct that constituted money laundering may have been incidental to the drug conspiracy, her other conduct, such as delivering money to Dennis Anderson so that he could purchase large quantities of narcotics, which is relevant to the money laundering charge under U.S.S.G. § 1B1.3(a), clearly furthered the drug conspiracy. *Cf.* U.S.S.G. 2S1.1 cmt. n. 2(B) (2005).

### B. The Offense Level for the Drug Conspiracy was Determinable

The second prong of § 2S1.1(a)(1), that the offense level for the underlying crime be determinable, was also met in this case. The district court asked Officer Hixson to estimate "the minimal amount of drugs which the defendant could reasonably have foreseen that Denn[is] Anderson was involved with over the time period that [Officer Hixson] believed [Ms. Anderson] was involved." J.A. at 116. Officer Hixson responded that the "minimum figure would be an estimated 3 pounds" of methamphetamine. J.A. at 116. This estimation allowed the district court to determine the offense level pursuant to § 2D1.1.

Ms. Anderson disputes that Officer Hixson's testimony allowed the district court to determine a drug quantity. Ms. Anderson's primary argument is that Officer Hixson was merely speculating or guessing as to the quantity of methamphetamine Ms. Anderson could have foreseen. She bases her argument on the fact that when Officer Hixson was asked if the three pound figure was a guess, he answered, "That's correct." J.A. at 118.

We find that the district court's drug quantity determination was not clearly erroneous. A drug quantity need only be established by a preponderance of the evidence, and an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant. *See United States v. Davis*, 981 F.2d 906, 911 (6th Cir. 1992); *accord* U.S.S.G. § 2D1.1 cmt. n. 12 (2005) ("Where there is no drug seizure . . . , the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance . . . ."). The proof was that Ms. Anderson had at "at times," i.e. "whenever [Dennis Anderson] needed money to purchase drugs," "deliver[ed] up to $20,000" so that Dennis Anderson could purchase drugs. J.A. at 105. Because "times" is plural, the most conservative estimate is that Ms. Anderson brought Dennis Anderson $20,000 to pay for drugs on at least two occasions, which at least makes her responsible for $40,000 of methamphetamine. The proof further established that Ms. Anderson had at least once picked up at least $50,000 of drug money from Dennis Anderson and Mr. Moerland, which brings Ms. Anderson's total participation in the conspiracy to at least $90,000 worth of methamphetamine. Officer Hixson estimated that Ms. Anderson was responsible for three pounds of methamphetamine, which sold for at least $1,100 per ounce and therefore had an approximate value of $52,800.

While Ms. Anderson contests these estimates as mere "speculation" on the part of Officer Hixson, Officer Hixson arrived at the three-pound figure through legitimate methods. Officer Hixson testified clearly that he arrived at the three-pound figure by taking the price of methamphetamine, which he knew through his "involvement in drug investigations," J.A. at 118, and "[c]onverting money into dope." J.A. at 116, 118. The district court had advised Officer Hixson that "it's fair to approximate drug quantities using money that could have been used to . . . purchase drugs." J.A. at 116. It is clear that Officer Hixson did just that, because the evidence established that Ms. Anderson had delivered $20,000 on at least two occasions so that Dennis Anderson could purchase drugs and that Ms. Anderson had picked up at least $50,000 of drug money from Dennis Anderson on at least one occasion.[2] We have many times before held that it is proper for a district

---

[2]In other words, Officer Hixson knew Ms. Anderson was responsible for at least $90,000 worth of methamphetamine, because she had delivered $20,000 in cash to Dennis Anderson for the purchase of methamphetamine on at least two occasions, and because she had picked up at least $50,000 of drug money on at least one occasion. Mr. Hixson also knew that methamphetamine typically sells, and was sold by Dennis Anderson, for at least $1,100 per ounce. Because there are sixteen ounces in a pound, a pound of methamphetamine would be worth $17,600. Officer Hixson's estimate of three pounds, then, was particularly conservative because Ms. Anderson could have been held responsible for over five pounds of methamphetamine ($90,000, the drug money attributable to Ms. Anderson's participation in the conspiracy, divided $17,600, the cost of a pound of methamphetamine, equals roughly 5.11 pounds).

court to estimate drug quantities based on known amounts of cash and convert that cash into narcotic-quantities based upon "the price generally obtained for the controlled substance." *See United States v. Salas*, 455 F.3d 637, 641 (6th Cir. 2006) (quoting U.S.S.G. § 2D1.1 cmt. n. 12 (2004)). Use of § 2S1.1(a)(1), therefore, was correct because (A) Ms. Anderson was involved in the drug conspiracy, and (B) the quantity of methamphetamine for which Ms. Anderson was responsible could be approximated.

## II. Specific Adjustments

Ms. Anderson contends that because the district court cross-referenced § 2D1.1 according to § 2S1.1(a)(1), the district court was also required to apply the specific offense characteristics of § 2D1.1(b). The government concedes the district court erred in this respect. Ms. Anderson also avers that the district court should not have adjusted the offense level based on the specific offense characteristics of § 2S1.1(b). The government argues that the district court was correct in doing so, and additionally points out that the district court erred by giving Ms. Anderson a reduction for a mitigating role in the conspiracy.

### A. Application of Specific Offense Characteristics of § 2D1.1(b)

The district court erred by not applying the specific offense characteristics of § 2D1.1(b). The general application principle in U.S.S.G. § 1B1.5(b)(1) (2005) states that "[a]n instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (i.e., the base offense level, specific offense characteristics, [etc.])." Section 2S1.1(a)(1) states that the base offense level for money laundering is "[t]he offense level for the underlying offense from which the laundered funds were derived." According to § 1B1.5(b)(1), therefore, "[t]he offense level" means applying § 2D1.1 in its entirety, rather than only § 2D1.1's base offense level section. *See United States v. Cruzado-Laureano*, 440 F.3d 44, 48 & n.9 (1st Cir. 2006); *cf. United States v. Harmon*, 409 F.3d 701, 707 (6th Cir. 2005); *see also* U.S.S.G. supp. to app. C, Amend. 634 (2002) ("[S]ubsection (a)(1) sets the base offense level at the offense level . . . for the underlying offense (*i.e.*, the base offense level, specific offense characteristics, [etc.].")). Ms. Anderson, therefore, was arguably eligible for a two-level safety valve reduction pursuant to § 2D1.1(b)(7).[3] Her offense level would have accordingly been reduced from thirty-two, which was obtained from the drug quantity calculation, to thirty.

### B. Application of Specific Offense Characteristics of § 2S1.1(b)

The district court was correct, however, when it applied the specific offense characteristics located in § 2S1.1(b). While Ms. Anderson contends that § 2S1.1(a)(1)'s instruction to, in this case, use § 2D1.1 means that only § 2D1.1 should be used to determine her Guidelines range, the general application principles in § 1B1.5 rejects such an argument. Section 2S1.1(a) provides two methods to determine the *base offense level* for money laundering. One method, used here, is to use the "offense level for the underlying offense." U.S.S.G. § 2S1.1(a)(1). The "offense level" from § 2D1.1, then, only constitutes the *base offense level* for purposes of § 2S1.1. *See* U.S.S.G. supp. to app. C, Amend. 634 (2002) ("[S]ubsection (a)(1) sets the *base offense level* at the offense level . . . for the underlying offense (*i.e.*, the base offense level, specific offense characteristics, [etc.].") (emphasis added)). Thus, applying the specific offense characteristics under § 2S1.1(b) to the offense level obtained from § 2D1.1 was proper. *See id.* ("The[] [subsection (b)] enhancements are designed to [] ensure that all direct money launderers receive additional punishment for committing both the money laundering offense and the underlying offense . . . ."); s*ee also Cruzado-Laureano*,

---

[3]On remand the district court should evaluate whether Ms. Anderson does in fact meet the requirements for a downward adjustment pursuant to § 2D1.1(b)(7). We do not hold that she is qualified; we only hold that the district court erred when it held that it could not consider the specific offense characteristic adjustments under § 2D1.1(b).

440 F.3d at 48 & n.9 ("The district court rightly applied the special offense characteristic provisions of § 2S1.1(b) after finishing its [] calculations [of the offense level for the underlying crime]."). Ms. Anderson's offense level of thirty, therefore, was properly increased to thirty-two based on § 2S1.1(b)(2)(B).

### C. Application of § 3B1.2(a)

The district court erred by providing a four-level reduction pursuant to § 3B1.2(a). Ms. Anderson had argued that she was entitled to a four-level reduction for her mitigating role in the drug conspiracy. U.S.S.G. § 1B1.5(c) provides support for this position. It states that "[i]f the offense level is determined by reference to another guideline . . . , the adjustments in Chapter three (Adjustments) also are determined in respect to the referenced offense guideline, except as otherwise expressly provided." Note 2(c) in the commentary to § 2S1.1, however, provides such an express exception: "Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustments shall be determined based on the offense covered by this guideline (*i.e.*, the laundering of criminally derived funds) . . . ."

When determining whether Ms. Anderson deserved a reduction under § 3B1.2(a) based upon her role in the offense where the offense is money laundering, it is clear that Ms. Anderson deserved no reduction. Indeed, note 2 in the commentary to § 3B1.2 states that multiple participants are required for a mitigating role reduction for a particular defendant. While Dennis Anderson no doubt requested that Ms. Anderson launder the money for him, Ms. Anderson was the only person who actually was criminally responsible for laundering the money. Additionally, even if Dennis Anderson could be considered criminally responsible for the money laundering, note 3(A) requires that the defendant be "substantially less culpable than the average participant," which Ms. Anderson surely was not because she was the only person who took steps to conceal the source of the drug proceeds. Ms. Anderson, therefore, improperly received a four-level reduction in her offense level.[4]

### D. Proper Calculation of Ms. Anderson's Guideline Range

Ms. Anderson's offense level, therefore, should have been calculated as follows. As detailed above, Ms. Anderson's base offense level began at thirty-two and then should have been reduced to thirty under § 2D1.1(a)(3).[5] Ms. Anderson's offense level was further reduced to twenty-eight pursuant to § 2D1.1(a)(7). *See* U.S.S.G. 2S1.1(a)(1) (2005). Applying the specific offense characteristics of § 2S1.1(b) increased Ms. Anderson's offense level to thirty. Ms. Anderson then should have received a three-level reduction pursuant to § 3E1.1, because of Ms. Anderson's acceptance of responsibility, as well as a three-level reduction pursuant to the government's § 5K1.1 motion for Ms. Anderson's substantial assistance to the government. Ms. Anderson's offense level, therefore, would be adjusted to twenty-four, which, when combined with a criminal history category of I, yields a recommended sentencing range of fifty-one to sixty-three months. The district court,

---

[4]We note that at oral argument Ms. Anderson's counsel conceded that it was likely that this four-level reduction was improperly granted.

[5]It may seem incongruous to provide a two-level reduction under § 2D1.1(a)(3), which premises the reduction on the defendant actually receiving an adjustment under § 3B1.2 based upon a mitigating role in the offense, when Ms. Anderson should not receive a mitigating role adjustment under § 3B1.2 because she did not play a mitigating role in the money laundering offense. The district court, however, found that Ms. Anderson played a mitigating role in the drug conspiracy. If Ms. Anderson was sentenced under § 2D1.1, then, she would have received a four-level reduction pursuant to § 3B1.2. She then also would have received an additional two-level reduction provided by § 2D1.1(a)(3). It appears, therefore, that the reduction under § 2D1.1(a)(3) should apply if the defendant played a mitigating role in the drug conspiracy, as Ms. Anderson did, even if Ms. Anderson did not actually receive the four-level reduction under § 3B1.2 because she did not play a mitigating role in the money laundering offense.

however, calculated Ms. Anderson's offense level as twenty-two, which yielded a recommended sentencing range of forty-one to fifty-one months.

## III. Harmlessness

At the outset, we note that it is unclear that an error in determining the Guidelines recommendation can ever be considered harmless post-*Gall*. *Gall* clearly directed the focus of sentencing courts to the Guidelines. For instance, the Court held that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 128 S. Ct. at 596. "[T]he Guidelines should be the starting point and the initial benchmark," so as to ensure fair sentencing "administration and to secure nationwide consistency." *Id.* Furthermore, the Court held, "[t]he fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 596 n.6. If the district court decides to sentence a defendant outside of the Guidelines range, then the district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. [The Court] f[ou]nd it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* at 597. On appeal, the Courts of Appeals "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . . or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Id.*

This focus on the Guidelines is consistent with the Court's other recent sentencing precedent. In *United States v. Booker*, 543 U.S. 220, 245-46 (2005), the Court held that sentencing courts are required to "consider" the Guidelines range. The Court held in *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) (emphasis added), that sentencing courts "*must* include the Guidelines range in the array of factors warranting consideration." Lastly, in *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) (emphasis added), the Court held that while a sentencing court "will *normally* . . . explain why he has rejected" arguments from the government and the defendant for a particular sentence, "the judge *will* explain why he has [imposed a sentence outside the Guidelines]."

With such a focus on the Guidelines recommended range, it may be that an incorrect Guidelines calculation, which is a "significant procedural error," *Gall*, 128 S. Ct. at 597, can rarely, if ever, be found harmless. If the premise from which the district court must begin its sentencing analysis, *id.* at 596 & n.6, is incorrect, then it seems that an appellate court would have a difficult time saying that the result would have been unchanged. *See, e.g.*, *United States v. Langford*, 516 F.3d 205, 215, 217 (3d Cir. 2008) ("We submit that the improper calculation of the Guidelines range can rarely be shown not to affect the sentence imposed. . . . [W]hen the starting point for the § 3553(a) analysis is incorrect, the end point, i.e., the resulting sentence, can rarely be shown to be unaffected."). The harmless error standard of review for sentences from *Williams v. United States*, 503 U.S. 193, 203 (1992), after all, requires the party who wishes to defend the sentence to "persuade the court of appeals that the district court would have imposed the same sentence absent the erroneous factor." We do not decide, however, how "rare" it will be for a Guidelines calculation error to be found harmless.[6]

---

[6] We have already, post-*Gall*, found a Guidelines calculation error harmless. In *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007), we held that imposition of a two-level upward adjustment was harmless because the district court had stated that it would have imposed a different two-level upward adjustment if it was in fact improper to apply the two-level upward adjustment it had applied. In *United States v. Jeross*, __ F.3d__, No. 06-2257, slip op. at 9-10 (Apr. 4, 2008), we found that a Guidelines calculation error was harmless because even the correct, lower Guidelines recommendation was above the statutory maximum, which was the sentence the district court had imposed on the defendant. We have also found, however, that an improper one-level upward adjustment was not harmless, despite the fact that the correct Guidelines range overlapped with the incorrect Guidelines range. *United States v. Goodman*, __ F.3d__, No. 06-5513, slip op. at 10 (Mar. 17, 2008).

Invoking the *Williams* standard of harmless error review, the government asserts that the district court's Guidelines calculation error was harmless. For support that the sentence would have been the same absent the Guidelines calculation error, the government points to statements made by the district court after it sentenced Ms. Anderson. The district court stated:

> The Court, taking into account the factors stated in Section 3553, has determined that this is the appropriate sentence in this case, based upon all the facts and circumstances that the Court has found apply to this case as well as the unique personal circumstances and background of the defendant. The Court has also determined that this would be the appropriate sentence and the sentence the Court would have imposed even had the Court determined that a different sentencing guideline range applied than the one the Court found applicable.

J.A. at 157.

We are not persuaded by the government's argument for two reasons. First, it is noteworthy that the district court chose to sentence Ms. Anderson within the incorrect Guidelines range it had calculated. *Cf. United States v. Brown*, 444 F.3d 519, 522 (6th Cir. 2006) (holding an error in considering the Guidelines harmless where the district court departed upward four-levels). Second, the district court had, prior to sentencing Ms. Anderson, intimated that the incorrect Guidelines range was an important factor in its sentencing decision. The district court had stated that it "believe[d] that a sentence within the guideline range w[ould] afford the Court with the authority to impose an appropriate sentence taking into account the factors in Section 3553 . . . ." J.A. at 155. Given this ambiguity, we cannot find that "the district court would have imposed the same sentence absent the erroneous factor." *See Williams*, 503 U.S. at 203.[7]

## CONCLUSION

For the foregoing reasons, the district court's sentence is VACATED and the case is REMANDED for resentencing consistent with this opinion.

---

[7]We note that Ms. Anderson's success on appeal has concluded in a perverse result. While she was correct that the district court made a calculation error in depriving her of a reduction, she failed to realize that the district court had made a greater error in her favor in providing a different reduction. Ms. Anderson, therefore, is likely to receive only a greater sentence on remand because the Guidelines range will be higher. Such a result, however, is the risk defendants take when appealing their sentences.

-------------------------

## **CONCURRENCE**

-------------------------

ALICE M. BATCHELDER, Circuit Judge, concurring. I write separately only to emphasize that we are not now holding, nor have we ever held, that an error in calculating the advisory Guidelines range can never be harmless. *See United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005).