NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0088n.06

No. 09-3839

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 08, 2011
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| SHAWN E. PASS, | ) | |
| | ) | |
| Defendant–Appellant. | ) | |
| | ) | |

Before: GUY, BOGGS, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant–appellant Shawn E. Pass pled guilty to drug conspiracy, wire fraud, and money laundering conspiracy. At sentencing, the district court agreed with the position of the government that Pass should receive a two-level increase for his supervisory role pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1(c). Pass appeals his sentence, first arguing that the two-level enhancement for his supervisory role was improperly added to his sentence. Second, Pass argues that his trial counsel's failure to object to the addition of this enhancement denied him effective assistance of counsel.

For the following reasons, we affirm the sentence imposed by the district court.

I.

1

On April 14, 2008, an indictment was returned charging Shawn E. Pass ("Pass"), Thomas A. Mundell ("Mundell"), and Joy J. Freeman ("Freeman") in seventeen counts. Specifically, Pass was charged with conspiracy to possess over five kilograms of cocaine, five grams or more of cocaine base, and marijuana with intent to distribute, in violation of 21 U.S.C. § 846; distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2; managing, controlling, and making available a place for the purpose of manufacturing, distributing, and storing cocaine and marijuana, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2; wire fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2; money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

In 2006, investigating agents with the Franklin County Sheriff's Office, the Delaware County Sheriff's Office, and the Ohio Bureau of Criminal Identification and Investigation developed a confidential source who had been buying cocaine from Pass for a number of years. Pass's arrest and plea were based upon six controlled purchases of marijuana, cocaine, and crack cocaine by the confidential source from December 2006 through September 2007.

Search warrants were executed on September 14, 2007, on Pass's two residences, where agents found $1,750 in cash, a cocaine press, a money counter, and a marijuana growing operation.

That same day a search warrant was executed on Mundell's residence, where agents found a cocaine press, scale, and residue.

Investigating agents confirmed that Pass had been distributing substantial amounts of cocaine from at least the mid-1990s. Furthermore, the evidence established that Pass conspired with Mundell and others to distribute and possess with intent to distribute cocaine, cocaine base, and marijuana. Pass found several different ways to conceal his proceeds by conducting transactions in the names of other people. From the sale of these aforementioned substances, Pass obtained a significant amount of money, which he used to support his lifestyle at a bar he owned called Club Obvious.

Pass committed wire fraud in the purchase of one of his residences ("Port Haven Drive"). The home was originally purchased in the name of his live-in girlfriend, Joy Freeman. Pass was involved in the purchase of Port Haven Drive and in obtaining three mortgages; Freeman signed the paperwork at Pass's request. In order to obtain these loans, both Pass and Freeman provided false information, including inflated gross income. Using proceeds from the loans, Freeman withdrew money and gave the cash to Pass, who used it to purchase drugs and/or pay expenses related to Club Obvious. After obtaining the third loan, Freeman and Pass failed to make any more monthly payments under the mortgages. In March 2007, Freeman filed for bankruptcy protection, resulting in the discharge of her debt and the nonpayment of the third loan. Port Haven Drive was foreclosed by the mortgage company.

On May 28, 2008, Freeman was arrested; she entered a guilty plea on December 11 to wire fraud and money laundering. On May 30, 2008, Mundell was arrested; he entered a guilty plea on

October 24 for conspiracy to distribute and possess with intent to distribute cocaine and five grams of cocaine base. Pass was also arrested on May 30, 2008.

On February 6, 2009, Pass pled guilty to the counts charging him with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, five grams or more of cocaine base, and marijuana; wire fraud; and conspiracy to commit money laundering. Also at the plea hearing, the other counts were dismissed, and the maximum penalties were outlined. In the plea agreement, the parties agreed that the base offense level attributable to the money laundering conspiracy was an offense level of 36 and that an additional two levels should be added pursuant to U.S.S.G. § 2S1.1(b)(2)(B) because Pass pled guilty under 18 U.S.C. § 1956. The agreement set forth the position of the United States that Pass was a supervisor of criminal activity and was thus subject to a two-level increase in the base offense level for his role pursuant to U.S.S.G. § 3B1.1(a). Pass reserved the right to object to this increase. The agreement recognized that the court would ultimately determine the applicable Guideline range. The government promised to recommend a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) if Pass continued to accept responsibility for his offenses.

The PSR agreed with the government's position on the supervisory role enhancement and also recommended that Pass not receive a reduction for acceptance of responsibility. Prior to his sentencing hearing, Pass filed several objections, including an objection to his supervisory role in the drug conspiracy and the money laundering conspiracy. At the sentencing hearing, after conferring with Pass, Pass's counsel withdrew all the objections to the PSR, and Pass confirmed to

the district court that this was his chosen course of action. The government then requested a two-level reduction for acceptance of responsibility. The district court found that Pass's total offense level was 38, subjecting him to a range of 235–293 months' imprisonment. The district court sentenced Pass to 180 months' imprisonment, five years of supervised release, and payment of $187,750 in restitution. Pass timely filed his notice of appeal on July 9, 2009.

Pass raises two issues on appeal: (1) whether the district court erred in calculating the applicable Guidelines range when it imposed a two-level enhancement for a criminal supervisory role; and (2) whether Pass was denied effective assistance of trial counsel when his counsel did not object to the guideline enhancement for a criminal supervisory role for the money laundering conspiracy.

II.

The primary issue Pass raises on appeal is whether the district court erred in imposing a two-level enhancement for a supervisory or organizational role pursuant to U.S.S.G. § 3B1.1(c). Because trial counsel failed to make a clear objection to the application of the sentencing enhancement in the district court, we review the district court's sentence for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). To demonstrate plain error, Pass must show (1) there was an error (2) that was plain, (3) that affected his substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008).

In order to determine if the district court erred, we first analyze whether an enhancement for a supervisory role in a money laundering conspiracy is permitted under § 2S1.1 of the Guidelines, and second whether the district court actually added the enhancement for Pass's involvement as a supervisor of the drug conspiracy or the money laundering conspiracy.

First, the parties dispute the meaning of the language of Application Note 2(C) to § 2S1.1. Section 2S1.1 of the Sentencing Guidelines sets forth the proper levels for sentencing a criminal for "laundering of monetary instruments." Application Note 2(C) reads:

> Application of Chapter Three Adjustments.—Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1 cmt. application n.2(C). The text of the note is clear that chapter three adjustments may not be applied with respect to the underlying offense—in this case the drug conspiracy. The text is also clear that chapter three adjustments may be applied with respect to the money laundering offense. Furthermore, we implied this reading of the application note in *United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008). On appeal after the defendant pled guilty to money laundering, we held that the defendant was not entitled to a four-level sentencing reduction for her role in the offense. *Id.* at 328. The district court applied the reduction for her mitigating role in the drug conspiracy pursuant to § 3B1.2(a). *Id.* We turned to Note 2(C) to reverse the district court, holding that the reduction could only have been applied if the reduction was based upon her role in the offense of *money laundering*, not in the offense of the drug conspiracy. *Id.* Thus, we have read Note

6

2(C) to permit the application of chapter three adjustments where the adjustments are applied to the money laundering offense.

Second, the parties dispute whether the supervisory role enhancement was applied for Pass's involvement in the drug conspiracy or the money laundering conspiracy. If the district court applied the organizer enhancement for Pass's involvement in the money laundering offense, rather than for his role in the drug conspiracy, then the district court committed no error and Pass's sentence is in compliance with Application Note 2(C) to § 2S1.1.

Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is "[t]he offense level for the underlying offense"—in this case the drug conspiracy—"if (A) the defendant committed the underlying offense . . . and (B) the offense level for that offense can be determined." U.S.S.G. § 2S1.1(a)(1). In the plea agreement, the parties agreed that the base offense level was 36 for the drug conspiracy. Because Pass pled guilty to 18 U.S.C. § 1956, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), the parties agreed that his base level would be increased by two levels to 38. These agreements were reflected in the PSR. Next, in the plea agreement the government (not Pass) took the position that Pass was a supervisor in the criminal activity outlined in counts 1 (drug conspiracy), 15 (wire fraud), and 17 (money laundering conspiracy). This provided for a two-level enhancement for a supervisory role at the time of sentencing. *See* U.S.S.G. § 3B1.1(c). The plea agreement specifically left open Pass's right to object to this enhancement, but Pass later withdrew his objections. The PSR agreed with the government's interpretation of Application Note 2(C) to U.S.S.G. § 2S1.1. It stated:

> According to Application Note #2(c) under § 2S1.1, in the case which subsection (a)(1) applies, application of any Chapter 3 adjustments shall be determined based

7

> on the offense covered by this guideline (i.e.: the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

The PSR continued to describe Pass's organizer role with respect to the money laundering activities, not the drug conspiracy activities. Furthermore, the district court acknowledged that the two-level enhancement was specifically for his "role in the offense in that [Pass] had been determined . . . to be an organizer with respect to the money laundering charge." The enhancement was imposed due to Pass's organizer role in the money laundering offense, and thus it was proper.

We affirm the sentence imposed by the district court.

### III.

In order to prevail on his claim for ineffective assistance of counsel, Pass must show (1) his counsel's performance was deficient and (2) that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the district court was correct in permitting the two-level enhancement for Pass's role as an organizer in the money laundering offense, the failure to object to such an enhancement cannot establish either deficiency or prejudice as needed for a claim of ineffective assistance of counsel. For that reason, we deny that Pass's claim of ineffective assistance of trial counsel.

### IV.

For the foregoing reasons, we affirm Pass's sentence.