**NOT FOR PUBLICATION**
File Name: 18a0492n.06

**Case No. 18-1043**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br>Oct 02, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Western |
| | ) | District of Michigan |
| ALFONZO DEWAYNE JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | | |

**Before: GUY, WHITE, and STRANCH, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Alfonzo Johnson pleaded guilty to conspiring to distribute at least 50 grams of methamphetamines and 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). The district court sentenced him to 360 months of imprisonment. On appeal, Johnson challenges the court's application of a two-point enhancement for importing the methamphetamines. For the reasons below, we affirm.

I.

For several years, Alfonzo Johnson trafficked heroin, cocaine, and methamphetamines in Muskegon, Michigan. Suppliers trucked the drugs up to Muskegon

in a specially modified Honda Ridgeline, where Johnson would receive them and then distribute them to others for resale. Johnson had several Muskegon associates in the endeavor, including Devanda Montgomery (his girlfriend), Jamaico Lockhart (his half-brother), and James Kitchen (his cousin), along with Alvin Rone and Demarco Knox. Each played one or more roles in paying for the drugs, transporting and storing them, or purchasing them from Johnson to then resell.

Johnson pleaded guilty pursuant to a plea agreement and his sole argument on appeal turns on where the methamphetamines came from. Under the United States Sentencing Guidelines, a defendant receives a two-point offense-level enhancement if the offense "involved the importation" of methamphetamines "that the defendant knew were imported unlawfully[.]" USSG § 2D1.1(b)(5). Johnson admitted that he conspired to distribute methamphetamines, but during sentencing he objected to the enhancement on the grounds that there was no evidence that they came from Mexico, let alone that he was aware they did. The district court overruled his objection and applied the two-point enhancement, thus leading to this appeal.

## II.

Johnson faces a demanding standard. At the sentencing stage, the government bore the burden of proving factors supporting a sentencing enhancement, but needed to prove them only by a preponderance of the evidence. *See United States v. Aleo*, 681 F.3d 290, 298 (6th Cir. 2012). And when this court reviews a district court's application of the Sentencing Guidelines, it must accept the district court's findings of fact unless they are clearly erroneous, treating with deference the court's applications of the Guidelines to the

facts. *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017) (citing 18 U.S.C. § 3742(e) and *Buford v. United States*, 532 U.S. 59, 63–66 (2001)).

Here, the evidence supported the district court's finding that the methamphetamines were imported and Johnson knew they were. To begin, during the trial of codefendant James Kitchen, an expert testified that methamphetamines are indeed smuggled from Mexico to the United States. Johnson admitted that he worked with a contact in Mexico, though he contended the contact was merely a "broker" who told him "who to see throughout the country to acquire the drugs[.]" Still, he admitted taking trips to Mexico with Montgomery, each time passing through Arizona, and notably, the truck that routinely delivered methamphetamines to Johnson had an Arizona license plate. On the way back from one of the trips, Johnson explicitly told a confidential informant that he and Montgomery had been in Mexico visiting narcotics contacts and offered to sell the informant methamphetamines at a particular price. Money was sent to Mexico too: Johnson admitted to personally wiring money to his drug suppliers in Mexico and he frequently directed the codefendants to do likewise. Finally, when law enforcement officers discovered 26 grams of methamphetamines in Lockhart's home, Lockhart told them that Johnson was his source and that Johnson obtained the drug from Mexico. Rone also told law enforcement officers that Johnson obtained methamphetamine from Mexico.

In other words, Johnson (1) regularly sent thousands of dollars to Mexico, (2) worked with people there to acquire a substance (methamphetamine) that often originates in Mexico and which multiple confederates confirmed actually came from Mexico, and (3) received repeated deliveries by a truck bearing the license plate of a border

state to Mexico. Given the foregoing, the district court did not clearly err by finding that, more likely than not, the methamphetamines were imported and Johnson knew it.

III.

Even if the district court had erred, the sentence it imposed would not warrant remanding. Although mistakes in guideline calculations may require this court to remand the case for resentencing, no remand is required if the error is harmless. *United States v. Anderson*, 526 F.3d 319, 324 (6th Cir. 2008). Error is harmless if we are certain that it "did not affect the district court's selection of the sentence imposed." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

Any error would be harmless here. Johnson conceded that his base offense level was 38 and admitted the correctness of a four-point enhancement due to his role as a leader or organizer. Given his criminal history, he faced an advisory guidelines range of 360 months to life even without the two-point enhancement for importing methamphetamines. USSG ch. 5, pt. A (Sentencing Table). Although the district court applied the enhancement, it sentenced him to 360 months of imprisonment. Simply put, Johnson already received a bottom-of-the-range sentence based on the offense level he asks for on appeal.

We **AFFIRM**.