# United States Court of Appeals
## For the First Circuit

No. 05-1822

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN MANUEL CRUZADO-LAUREANO, a/k/a Manny,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Alexander Zeno for appellant.
Thomas F. Klumper, Assistant United States Attorney, with
whom H. S. Garcia, United States Attorney, and Nelson Pérez-Sosa,
Assistant United States Attorney, were on brief, for appellee.

March 14, 2006

**STAHL**, **Senior Circuit Judge**.  In 2002, a jury convicted Juan Manuel Cruzado-Laureano, the former mayor of Vega Alta, Puerto Rico, on a broad slate of corruption-related charges.  Through a variety of schemes, Cruzado extorted funds from government contractors and embezzled funds that belonged in the city coffers.  Although we sustained his convictions in an earlier appeal, we vacated his sentence because it was imposed under the wrong version of the United States Sentencing Guidelines.  After resentencing, Cruzado is back before us in this appeal, contesting the applicability of particular provisions of the Guidelines to the facts of his case.  In large part, the district court acted properly in imposing Cruzado's sentence.  However, we find that the district court impermissibly increased Cruzado's sentence on the basis of two provisions that dealt with his abuse of his elected office.  We therefore vacate the sentence and once again remand for re-sentencing.

## I. Background

This case comes to us on appeal for the second time.  The facts of the case are laid out extensively in our prior opinion, see United States v. Cruzado-Laureano, 404 F.3d 470, 473-80 (1st Cir. 2005), and we need not rehearse them here in any great detail. Briefly put, Juan Manuel "Manny" Cruzado-Laureano has had a varied career.  A high-school mathematics teacher for seven years early on in life, Cruzado later worked 16 years in the construction

-2-

industry, four as an administrator in his wife's dental practice, and five as the owner and manager of a check-cashing business. In November 2000, Cruzado was elected mayor of Vega Alta, a municipality in Puerto Rico. Almost immediately after taking office, Cruzado began extorting and laundering money by, among other things, demanding kickbacks on municipal contracts and redirecting funds intended for the government into his own pocket. Cruzado would clear the extorted money through his own bank account, through his old check-cashing business (now owned by his son), or through the accounts at his wife's dental practice. The Federal Bureau of Investigation began investigating Cruzado's conduct in 2001, and an initial indictment was issued in October of that year. During the course of the investigation and after the initial indictment was handed down, Cruzado compounded his legal troubles by attempting to tamper with three potential witnesses against him.

A 14-count superseding indictment was returned on January 25, 2002. The indictment charged Cruzado with one count of embezzlement under 18 U.S.C. § 666(a)(1)(A)(i) and (a)(1)(A)(ii) (2000); six counts of extortion under § 1951(a); six counts of money laundering under § 1956(a)(1)(B)(i) and (a)(1)(B)(ii); and one count of tampering with a witness under § 1512(b)(1) and (b)(2). After the close of evidence, the court dismissed one of the money-laundering charges, and the jury eventually returned a

verdict of not guilty on one of the extortion charges.  Cruzado was convicted by the jury on each of the remaining twelve charges.

The district court imposed a 63-month sentence.[1]  In his earlier appeal, Cruzado unsuccessfully challenged his conviction on a number of grounds not relevant here.  Cruzado prevailed, however, on his claim that the district court applied the wrong version of the Sentencing Guidelines.  The court had sentenced Cruzado under the 2000 edition of the Guidelines.  We held that it ought to have relied on the 2002 Guidelines, and so vacated the sentence and remanded the case for resentencing.  On remand, the court performed the sentencing calculation anew under the 2002 Guidelines.[2]

Section 2C1.1 of the Guidelines provides sentencing guidance for "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right," and § 2S1.1 for "Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity."  Money laundering is, generally speaking, a derivative offense: money needs to be laundered because it was illegally derived.  In recommending a sentence for money laundering under § 2S1.1, the

---

[1]The court also imposed a one-year sentence for the witness-tampering charge, to run concurrently with the 63-month sentence imposed for the rest of the charges.

[2]The court imposed the new sentence after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which rendered the Guidelines advisory.  It nevertheless imposed sentence based on the Guidelines recommendation.

Guidelines take as the base offense level the full computed offense level relevant to the underlying offense.  In making its sentencing calculation, the district court proceeded by:

1)      turning from the money laundering provision, § 2S1.1,[3] to the provision for the underlying offense, § 2C1.1;[4]

2)      determining the base offense level for extortion offenses under § 2C1.1(a);

3)      adjusting that level upward according to the rules for specific offense characteristics applicable under the extortion guideline, § 2C1.1(b);

4)      taking the resulting final offense level for extortion as the base offense level for money laundering under § 2S1.1(a);

5)      applying additional enhancements specified by the money laundering guideline under § 2S1.1(b);

---

[3]In the 2002 Guidelines Manual, § 2S1.1 read in relevant part: "Base Offense Level: . . . The offense level for the underlying offense from which the laundered funds were derived . . . ,"  § 2S1.1(a)(1); "If the defendant was convicted under 18 U.S.C. § 1956, increase by 2 levels,"  § 2S1.1(b)(2)(B).

[4]In 2002, § 2C1.1 read in relevant part: "Base Offense Level: 10," § 2C1.1(a); "If the offense involved more than one bribe or extortion, increase by 2 levels," § 2C1.1(b)(1); "If the offense involved a payment for the purpose of influencing an elected official or any official holding a high-level decision-making or sensitive position, increase by 8 levels," § 2C1.1(b)(2)(B).

6)        applying additional enhancements under relevant general adjustment provisions laid out in Chapter Three of the Guidelines Manual.

Thus, the district court started with a base offense level of 10, specified by § 2C1.1(a) as the base offense level for extortion.  It applied a two-level enhancement under § 2C1.1(b)(1) because the offense involved more than one incident of extortion, and an eight-level enhancement under § 2C1.1(b)(2)(B) because the extortion involved a payment for the purpose of influencing an elected decision-making official.  The final offense level under § 2C1.1 was thus 20.  Under § 2S1.1(a), level 20 became the base offense level for the money laundering, to which the court applied an additional two-level enhancement under § 2S1.1(b)(2)(B) because the offense involved a conviction under the money laundering statute, 18 U.S.C. § 1956.

The court then turned to the general-purpose adjustment provisions of Chapter Three, and found two applicable.  The court applied a two-level enhancement for abuse of a position of public trust under § 3B1.3,[5] and another two-level enhancement for

_____

[5]In 2002, § 3B1.3 read in relevant part: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.  This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic."  § 3B1.3.

obstruction of justice under § 3C1.1.[6]  Cruzado's final offense

level under these calculations was 26, and the court determined

that he fell into criminal history category I.  Taken together, the

offense level and criminal history category produced a recommended

sentence of 63-78 months.  See USSG Ch.5, Pt.A (Sentencing Table).

This recommended sentence was no shorter and potentially longer

than the 63 months to which Cruzado had originally been sentenced.

The court decided that Cruzado ought not to suffer for having

exercised his right of appeal, and imposed a sentence identical to

the one earlier imposed.  Cruzado timely brought this appeal,

challenging the district court's application of several provisions

of the Guidelines.[7]

## II. Legal Challenges

On a challenge to a sentence imposed on the basis of a

Guidelines recommendation, we "determine the legal meaning of

---

[6]In 2002, § 3C1.1 read: "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." § 3C1.1.

[7]Cruzado also challenges the court's order requiring payment of restitution and a fine, and ordering supervised release, but in too perfunctory a manner to permit us to evaluate the merits of those aspects of his punishment.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-7-

Guidelines provisions de novo."  United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005).

## A. Extortion by an Elected Official

The district court increased Cruzado's offense level by eight points under § 2C1.1(b)(2)(B), which states:  "If the offense involved a payment for the purpose of influencing an elected official or any official holding a high-level decision-making or sensitive position, increase by 8 levels."  Cruzado was convicted for being on the receiving end of various corrupt pay-offs, and he argues that this provision only applies when a defendant has made, rather than received, the payment.  Nothing in the quoted language suggests that this is so.  The provision reflects the Sentencing Commission's determination that the abuse of a position of great public trust, or the effort to corrupt a person holding such a position, is more dangerous than the corruption of, for example, a housing inspector or tax assessor.  The eight-level increase is mandated for a defendant precisely like the defendant here, an elected official who abuses his position.  Extortion "involves" payments intended to influence the behavior of the extortioner just as clearly as bribery "involves" payments intended to influence the bribe-taker.[8]  See United States v. Bynum, 327 F.3d 986, 993-94 (9th Cir. 2003); United States v. Villafranca, 260 F.3d 374, 381-82

---

[8]Nor is the rule of lenity applicable, as Cruzado claims: there is nothing at all ambiguous in § 2C1.1.

-8-

(5th Cir. 2001). The district court correctly applied an eight-level enhancement under § 2C1.1(b)(2)(B).

## B.  Incorporation of a Referenced Guideline

Section 2S1.1 of the Sentencing Guidelines, which applies to money laundering, directs the sentencing court to take as the base offense level for purposes of § 2S1.1 the full calculated offense level that applies to the offense which produced the laundered funds. See § 2S1.1(a) ("Base Offense Level" for money laundering is "[t]he offense level for the underlying offense from which the laundered funds were derived"). Here, this instruction meant that, before considering what money-laundering-related adjustments to apply to Cruzado's sentence, the court first had to calculate the sentence as it would have applied to the extortion counts standing alone, making reference to § 2C1.1. It was only then required to return to § 2S1.1 (and specifically to § 2S1.1(b)) to determine if further adjustments were necessary under that provision. In this case, having calculated the final offense level for the extortion offenses under § 2C1.1 and applied it as the base offense level for money laundering under § 2S1.1, the district court went on to find that a further two-level enhancement was warranted under § 2S1.1(b)(2)(B), because Cruzado was convicted of money laundering under 18 U.S.C. § 1956.

Cruzado contends that, having once turned from § 2S1.1 to § 2C1.1 under the direction of § 2S1.1(a), the district court

should not have turned back to a consideration of the special offense characteristics under § 2S1.1(b), but this is flatly incorrect. As is generally the case among the offense guidelines specified in Chapter Two of the Guidelines Manual, § 2S1.1 contemplates that the adjustments for special offense characteristics specified in its part (b) will be applied after the base offense level specified in its part (a) has been calculated, whether or not that base offense level is calculated by reference to another provision of the Guidelines.[9] The district court rightly applied the special offense characteristic provisions of § 2S1.1(b) after finishing its § 2C1.1 calculations.

## C. Abuse of Trust

The district court applied a two-level abuse-of-trust enhancement under § 3B1.3. That section calls for such an increase "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or

---

[9]Section 1B1.5 provides instructions for reading a guideline that refers to another guideline. That section directs that "[a]n instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline." § 1B1.5(b)(1). This provision meant here that, where § 2S1.1(a) incorporated the offense level for extortion as the base offense level for money laundering, it incorporated the final calculated offense level for the extortion, which was 20, and not merely the unadjusted base offense level for extortion, which would have been 10. Cruzado argues that the instruction under § 1B1.5 that § 2S1.1(a) be read to incorporate the "entire offense guideline" specified at § 2C1.1 precluded making further adjustments under the remainder of § 2S1.1, but this reading of § 1B1.5 is simply implausible.

concealment of the offense." § 3B1.3. It cautions, however, that "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." Id. This second provision bars application of a § 3B1.3 abuse-of-trust enhancement to a case in which any provision that increases a sentence for an offender who holds high public office already applies. This is such a case.

The district court here evidently found the § 3B1.3 abuse-of-trust provision applicable because Cruzado had used the power of his high office in extorting and embezzling funds.[10] Abuse of high office was the same concern, however, that justified the application of an eight-level enhancement under § 2C1.1(b)(2)(B). Section 3B1.3 and § 2C1.1(b)(2)(B) both increase a defendant's sentence for abusing a position of trust, and by the terms of § 3B1.3 cannot both be applied to increase the same defendant's sentence.[11]

---

[10]While the court did not explain in detail its reasons for imposing the § 3B1.1 abuse-of-trust enhancement, it is evident that it did so because it considered Cruzado's use of his high office to facilitate his wrongdoing to trigger the guideline provision, and this is indeed a typical understanding of the provision. See, e.g., United States v. Sarault, 975 F.2d 17 (1st Cir. 1992) (noting that former mayor had been determined to have merited, and had not challenged, § 3B1.3 abuse-of-trust enhancement for role in corruption scheme).

[11]The Sentencing Commission itself appears to recognize that § 2C1.1(b)(2)(B) and § 3B1.3 are redundant, for in the application notes to § 2C1.1, the Commission directs that when sentencing under the provisions of § 2C1.1, a sentencing court should "not apply § 3B1.3 (Abuse of Position of Trust or Use of Special Skill)." §

In arguing in favor of the § 3B1.3 enhancement, the Government relies primarily on an application note to the laundering guideline, which says that in cases where the offense level is determined by reference to the guideline for another offense, "application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." § 2S1.1 cmt. n.2(C).  At first blush, one might read this to suggest that in this case the calculation under the extortion guideline, including its abuse-of-trust enhancement, should simply be ignored when it comes to considering the § 3B1.3 adjustment, and instead one should simply ask the mechanical question whether in his money laundering activities a defendant abused a position of trust.  In answer to that question, the district court apparently found that Cruzado's official position facilitated not only his extortion but also his money laundering.  Cruzado attacks the latter conclusion, but it seems plausible enough to us.

The weakness of the Government's larger argument, however, is that the § 3B1.3 abuse-of-trust enhancement, as we have noted, "may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic."  §

2C1.1 cmt. n.3.  We do not rely on the application note in reaching our decision, however, but on the plain language of § 3B1.3.

3B1.3. While application note 2(C) to the money-laundering guideline provides that Chapter Three adjustments should be determined with reference to the money-laundering <u>offense</u> and not to the underlying offense, the fact remains that the money-laundering offense <u>level</u> was itself determined pursuant to a cross-reference that already required an upward adjustment based on abuse of trust--thereby literally triggering the prohibition ("This adjustment may not be employed . . .") which we have just quoted.

Although double-counting is not automatically impermissible under the Guidelines (and is sometimes intentionally directed), we can see no particular reason why one would want double-counting in this situation. For these reasons, we conclude that the district court erred in applying an abuse-of-trust enhancement under § 3B3.1.

### III. Conclusion

Having determined that the court's interpretation of the Guidelines was legally erroneous, <u>see</u> <u>Robinson</u>, 433 F.3d at 35, we must again send the case back to the district court. <u>See</u> <u>United States</u> v. <u>Plaza-Garcia</u>, 914 F.2d 345, 347 (1st Cir. 1990); 18 U.S.C. § 3742(f)(1) (requiring that incorrectly calculated sentences be remanded). In remanding the case, we do not intend to intimate that the length of the sentence should necessarily be changed; what matters is that the premise as to the Guideline range must be correct.

The sentence imposed by the district court is **<u>vacated</u>** and the case is **<u>remanded</u>** for resentencing.