08-2761-cr
*United States v. Sierra*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2009

Docket No. 08-2761-cr

Submitted: October 19, 2009                    Decided: March 29, 2010

_____

UNITED STATES OF AMERICA,

*Appellee*,

- v.-

RAMIRO MENENDEZ, ALBERTO SIERRA, VILMA BIDO, ANGELO LISI, RUSSELL LAWRENCE, CARLOS EKMEIRO, also known as "Pelon," PAUL PACHECO, RICARDO SOBALVARRO, MARTHA COBIS, KENYI MARIELA DIAZ-PEREZ,

*Defendants*,

GUSTAVO SIERRA, also known as "Papo," also known as "Ray," also known as "Raul," also known as "Mr. X,"

*Defendant-Appellant*.

_____

Before: JACOBS, <u>Chief Judge</u>, MINER and LIVINGSTON, <u>Circuit Judges</u>.

Appeal from a judgment entered on June 3, 2008, in the United States District Court for the Southern District of New York (Batts, <u>J.</u>), following a guilty plea, convicting defendant-appellant of one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846, and one count of conspiracy to launder narcotics proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h), the court having sentenced defendant to concurrent terms of imprisonment of 135 months upon a determination that the base offense level under the United States Sentencing Guidelines for defendant's conviction for conspiracy to launder money was to be calculated in accordance with the amount of narcotics involved in his conviction for conspiracy to distribute narcotics.

Affirmed.

Randa D. Maher, Law Office of Randa D. Maher,

Great Neck, New York, for defendant-appellant.

Sarah Y. Lai and Guy Petrillo, Assistant United States Attorneys, Lev L. Dassin, Acting United States Attorney for the Southern District of New York, United States Attorney's Office for the Southern District of New York, New York, New York, for appellee.

MINER, Circuit Judge:

Defendant-appellant Gustavo Sierra ("Sierra") appeals from a judgment of conviction and sentence entered on June 3, 2008, in the United States District Court for the Southern District of New York (Batts, J.), following a guilty plea to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846, and one count of conspiracy to launder narcotics proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h). The District Court sentenced Sierra to concurrent terms of imprisonment of 135 months upon a determination that the base offense level under the United States Sentencing Guidelines (the "Guidelines") for Sierra's conviction for conspiracy to launder money, see 18 U.S.C. § 1956(a)(1)(B)(i), (h), was to be calculated in accordance with the amount of narcotics involved in his conviction for conspiracy to distribute narcotics, see 21 U.S.C. §§ 841(a)(1), (b)(1), 846. For the reasons that follow, we affirm the judgment of the District Court.

I.      BACKGROUND

From 2003 to 2004, Sierra and his principal co-conspirator, Alberto Sierra ("Alberto"), engaged in a conspiracy to distribute drugs and launder money. According to the scheme, a supplier based in Venezuela provided Alberto with heroin to sell in the New York City area, and Sierra — on behalf of Alberto — collected the proceeds of the drug sales as well as sold some of the heroin. Sierra then transferred the drug proceeds to either Alberto or to "other people," who acted as intermediaries on behalf of drug suppliers located in Venezuela, to disguise the nature, location, source, ownership, and control of the drug proceeds.

Following Sierra's, Alberto's, and other related defendants' arrests in 2004, Sierra was

2

indicted on two counts: one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846 ("Count One"), and one count of conspiracy to launder narcotics proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h) ("Count Two"). Although the amount of narcotics in Count One involved approximately 21 kilograms of heroin, the value of the laundered funds in Count Two amounted to the proceeds from the sale of between 2 and 3.5 kilograms of heroin.[1] On July 12, 2006, Sierra, without a plea agreement, pleaded guilty to both counts of the Indictment.

In preparation for sentencing, the United States Probation Department submitted a Presentence Investigation Report ("PSR") calculating Sierra's applicable Guidelines offense level. The PSR grouped Counts One and Two pursuant to U.S.S.G. § 3D1.2(c), and calculated Sierra's base offense level for Count Two by applying the total amount of drugs involved in Count One.[2] This grouped calculation resulted in a base offense level of 36. After adding two levels for Sierra's conviction under 18 U.S.C. § 1956, adding three levels for Sierra's supervisory or managerial role in the criminal scheme, and subtracting three levels for Sierra's acceptance of responsibility for his crimes, the PSR assigned Sierra a total Guidelines offense level of 38. Sierra objected to the PSR's application of the total amount of drugs involved in Count One to calculate the base offense level for Count Two.

Although the government agreed for the most part with the PSR's calculations, it notified the District Court that, contrary to the findings in the PSR, Sierra did not warrant a role enhancement as a manager or supervisor in the criminal scheme. The government also advised the District Court that Sierra qualified for safety valve relief under 18 U.S.C. § 3553(f).

---

[1] The parties do not dispute the amount of drugs involved in Counts One and Two.

[2] Because Counts One and Two were grouped pursuant to U.S.S.G. § 3D1.2(c), see also U.S.S.G. § 2S1.1 cmt. n.6, the base offense level for Count Two and any subsequent adjustments applicable to that count incorporated the recommended Guidelines punishment for Count One, i.e., the two counts were combined "into a single Group." See U.S.S.G. § 3D1.2.

3

Accordingly, the government submitted an adjusted Guidelines offense level of 33, and requested that Sierra be sentenced within the corresponding Guidelines range of 135 to 168 months' imprisonment. Sierra again objected that Count Two could not be calculated by applying the amount of drugs involved in Count One.

At Sierra's sentencing hearing, the District Court agreed with the government that Sierra's Guidelines offense level was 33. The District Court rejected Sierra's contention that the amount of drugs involved in Count One, i.e., the conspiracy to distribute approximately 21 kilograms of heroin, could not be considered in calculating the base offense level for Count Two, i.e., the conspiracy to launder proceeds from the sale of 2 to 3.5 kilograms of heroin.[3] Upon reviewing the factors set forth in 18 U.S.C. § 3553(a) in addition to the Guidelines, the District Court sentenced Sierra to concurrent terms of imprisonment of 135 months; to concurrent terms of supervised release of 5 and 3 years (Count One and Count Two, respectively); and imposed a mandatory assessment of $200. This timely appeal followed.

On appeal, Sierra argues that the District Court erred in considering the amount of drugs involved in Count One to calculate the base offense level for Count Two. This presents an issue of first impression in this Circuit. Sierra also argues, for the first time, that the District Court created an unwarranted disparity in sentencing by imposing upon him a longer term of imprisonment than on each of his several co-defendants. Specifically, Sierra asserts that co-defendants who played the same or a larger role in the criminal scheme were given lesser terms of imprisonment than he.

II.    ANALYSIS

A.    Standard of Review

We review sentences for abuse of discretion. United States v. Carr, 557 F.3d 93, 103 (2d Cir. 2009). "The abuse-of-discretion standard incorporates de novo review of questions of law

_____

[3] Under Sierra's calculation of his total offense level, limiting the amount of drugs to 2 to 3.5 kilograms for calculating Count Two would have resulted in a total offense level of 31.

4

(including interpretation of the Guidelines) and clear-error review of questions of fact." United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008). To the extent a defendant appeals his sentence on grounds that were not raised before the district court, our review is for plain error. United States v. Gamez, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). "Plain error is (1) error (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Riggi, 541 F.3d 94, 102 (2d Cir. 2008).

B.      Base Offense Level for Count Two

Although the Guidelines are no longer mandatory, district courts remain obliged to consider the Guidelines in determining a criminal defendant's sentence. See United States v. Parnell, 524 F.3d 166, 170 (2d Cir. 2008) (per curiam). A district court's miscalculation of the Guidelines constitutes procedural error that "may be a cause for remanding to the district court for explanation or correction." United States v. Johnson, 567 F.3d 40, 52 (2d Cir. 2009).

At issue in this case is the interpretation of U.S.S.G. § 2S1.1, which directs grouping of the offenses at issue here, see U.S.S.G. § 2S1.1 cmt. n.6; provides formulae for determining the base offense level for money laundering offenses, see U.S.S.G. § 2S1.1(a); and sets forth additional enhancements for specific offense characteristics, see U.S.S.G. § 2S1.1(b). Section 2S1.1 provides, in part:

> **§ 2S1.1. Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity**
>
> (a) Base Offense Level:
>
> > (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or
> >
> > (2) **8** plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

U.S.S.G. § 2S1.1 (emphasis added; bold font in original).

The "underlying offense" referred to in section 2S1.1(a)(1) is "the offense which produced the laundered funds." United States v. Cruzado-Laureano, 440 F.3d 44, 48 (1st Cir. 2006); accord United States v. Hodge, 558 F.3d 630, 636 (7th Cir. 2009); United States v. Blackmon, 557 F.3d 113, 119–20 (3d Cir. 2009); United States v. Anderson, 526 F.3d 319, 324 (6th Cir. 2008); United States v. Charon, 442 F.3d 881, 887–88 (5th Cir. 2006). The total Guidelines offense level for such "underlying offense," after being independently calculated by applying all appropriate adjustments, see, e.g., Cruzado-Laureano, 440 F.3d at 48, and considering any relevant conduct under U.S.S.G. § 1B1.3, see, e.g., Charon, 442 F.3d at 888-89, is then used as the base offense level for money laundering pursuant to U.S.S.G. § 2S1.1(a)(1) if two conditions are met: (1) the defendant committed the "underlying offense" or is otherwise accountable for the "underlying offense" under the relevant-conduct Guidelines provision, see U.S.S.G. § 1B1.3; and (2) the base offense level for the "underlying offense" is determinable. See U.S.S.G. § 2S1.1(a)(1).

If either of the foregoing conditions are not met, the base offense level for money laundering is determined by adding eight levels to the corresponding base offense level set by "the value of the laundered funds." U.S.S.G. § 2S1.1(a)(2). In shorthand, the Sentencing Manual and the courts have referred to section 2S1.1(a)(1)'s sentencing formula as punishing "direct money launderers" and section 2S1.1(a)(2)'s alternative formula as punishing "third party money launderers." See U.S.S.G. supp. to app. C, amend. 634, at 234 (Nov. 1, 2001); see also, e.g., Blackmon, 557 F.3d at 119 ("Direct launderers are those who also commit the crime that produces the illicit funds, whereas third-party launderers have no involvement in the underlying offense and only launder the money generated from that offense.").

It is undisputed in this appeal that the "underlying offense" in this case is Count One, which involved a conspiracy to distribute approximately 21 kilograms of heroin and therefore was assigned a base offense level of 36 under U.S.S.G. § 2D1.1 Drug Quantity Table (2).

Pursuant to U.S.S.G. § 2S1.1(a)(1), then, because Sierra was convicted of Count One and the offense level for Count One is determinable, the offense level for Count One, i.e., 36, becomes the base offense level for Count Two. See, e.g., Cruzado-Laureano, 440 F.3d at 48.

Sierra argues that, because U.S.S.G. § 2S1.1(a)(1) incorporates the relevant conduct guideline U.S.S.G. § 1B1.3, "just as a defendant's relevant conduct can elevate the offense level, conversely, it should serve to reduce the offense level." Appellant's Br. at 23. Relying on this logic, Sierra claims that the relevant mitigating conduct here is that he laundered only 2 to 3.5 kilograms worth of drug proceeds rather than having laundered the entire amount of 21 kilograms worth of drug proceeds involved in his conviction for conspiracy to distribute drugs. We reject Sierra's argument, as it lacks support in the text and purpose of the Guidelines.

First, section 2S1.1(a)(1)(A) expressly permits the consideration of relevant conduct to determine whether the defendant "would be accountable for the underlying offense." This statutory dictate, as evident from its text, permits consideration of relevant conduct to determine only the defendant's accountability for the underlying offense. Thus, "relevant conduct," as expressly referred to in section 2S1.1(a)(1)(A), is not considered in any way to affect the underlying offense level.

Second, insofar as relevant conduct may be separately considered to calculate the offense level for the "underlying offense,"[4] Sierra's argument that the amount of funds he actually laundered should constitute "mitigating" relevant conduct is unsupported by the Guidelines. Under the relevant-conduct Guidelines provision, a defendant "is accountable for all quantities of contraband with which he was directly involved." U.S.S.G. § 1B1.3 cmt. n.2. That a defendant

[4] Although not contested in this appeal, we agree with our sister circuits that relevant conduct may be separately considered in calculating the offense level for the "underlying offense." See, e.g., Charon, 442 F.3d at 888–89 (holding that relevant conduct may be considered in calculating the underlying offense level pursuant to the inherent implications of the grouping rules); accord Blackmon, 557 F.3d at 122–23 ("[N]othing in § 2S1.1, its sentencing commentary, or any other pertinent Guideline, indicates that the sentencing judge should apply the grouping rules under § 3D1.2[, which necessarily takes into account the relevant conduct provisions of the Guidelines,] differently in the context of § 2S1.1(a)(1).").

laundered a lesser amount of funds than the value of his entire drug operation, therefore, is immaterial. See generally United States v. Bonnet-Grullon, 212 F.3d 692, 707 (2d Cir. 2000) ("[T]he Guidelines require the court to take into account uncharged conduct that is '[r]elevant [c]onduct . . .' in order to increase the defendant's offense level." (first alteration and emphasis added)), superseded by statute on other grounds by 18 U.S.C. § 3742(e).

Third, Sierra's interpretation of the relevant-conduct Guidelines undermines the express purpose of section 2S1.1(a) to punish direct money launderers "one to four levels greater than the Chapter Two offense level for the underlying offense" U.S.S.G. supp. to app. C, amend 634, at 235 (Nov. 1, 2001); see also id. at 234 (explaining that section 2S1.1 is intended "to promote proportionality by providing increased penalties for defendants who launder funds derived from more serious underlying criminal conduct, such as drug trafficking"). Sierra's contention that the value of the laundered funds must be considered to reduce the offense level of the "underlying offense" is inconsistent with section 2S1.1(a)(1)'s sentencing calculus, which was intended for a money laundering offense to add to the underlying offense in direct money laundering cases such as Sierra's. See id. at 234–35.

Fourth, were we to accept Sierra's argument, we would erroneously conflate the direct money laundering provision under section 2S1.1(a)(1) with the third-party money laundering provision under section 2S1.1(a)(2). Section 2S1.1(a)(2), which provides a method of calculating the base offense level applicable to third-party money launderers, expressly permits consideration of "the value of the laundered funds" to determine the proper offense level. Section 2S1.1(a)(1), by contrast, does not refer to "the value of the laundered funds" in any way. This omission indicates an intent to exclude the consideration of "the value of the laundered funds" in determining the base offense level under Section 2S1.1(a)(1). See Hardy v. N.Y. City Health & Hosps. Corp., 164 F.3d 789, 794 (2d Cir. 1999) (noting the "familiar principle" of statutory interpretation that "the mention of one thing implies the exclusion of the other").[5]

_____

[5] To the extent Sierra invokes the rule of lenity, see generally United States v. Simpson, 319 F.3d 81, 86 (2d Cir. 2002) (holding that the rule of lenity, which provides that ambiguity in

8

We therefore hold that the District Court did not err in calculating the base offense level for Sierra's conviction in Count Two, conspiracy to launder money, by considering the amount of narcotics involved in his conviction for Count One, conspiracy to distribute heroin. The District Court properly applied the base offense level for Count One to Count Two without according any reduction in the offense level based on the lesser amount of funds actually laundered in the criminal scheme.

C.      Sentencing Disparity

Sierra also argues that the District Court committed plain error because his sentence created an unwarranted disparity between him and each of his co-defendants. Although it is true that a district court may compare co-defendants' sentences to avoid unwarranted sentencing disparities, see United States v. Wills, 476 F.3d 103, 110 (2d Cir. 2007), abrogated on other grounds by United States v. Cavera, 550 F.3d 180 (2d Cir. 2008); see also United States v. Williams, 524 F.3d 209, 216 (2d Cir. 2008), the sentencing disparities between Sierra and his co-defendants were not unwarranted in this case, see United States v. Ebbers, 458 F.3d 110, 129 (2d Cir. 2006). Unlike Sierra, his co-defendants either (1) pleaded guilty pursuant to a plea agreement, (2) pleaded guilty to conspiracy to distribute heroin or narcotics but not to conspiracy to launder money, (3) pleaded guilty to conspiracy to launder money but not to conspiracy to distribute, or (4) were exceptionally honest in admitting to the crimes, and brought to the court's attention unique facts, such as HIV-positive status and a resulting reduced risk of recidivism. On plain error review, we therefore reject Sierra's unwarranted-disparity argument as without merit.

III.   CONCLUSION

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

criminal statutes is to be resolved in favor of the defendant, applies to the Guidelines), that doctrine is inapplicable where, as here, the challenged text is not ambiguous after our examination of the statute, see United States v. Hayes, 129 S.Ct. 1079, 1088 (2009); see also id. (indicating that an ambiguity must be "grievous[]" for the rule of lenity to apply).

9