20-622
United States v. Murphy

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of August, two thousand twenty-one.

PRESENT:
        **REENA RAGGI,**
        **GERARD E. LYNCH,**
        **MICHAEL H. PARK,**
            *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

    v.                                        No. 20-622-cr

ERNEST MURPHY, AKA PROBLEM G, AKA E,

        *Defendant-Appellant,*

Tyshawn Burgess, AKA Ty, AKA Ty Black, Lloyd Gordon, AKA LG, Larry Bayer, AKA L, Kerry Felix, AKA Mack, Devontae Newton, AKA D-Block, AKA Sneeze, Tyrell Sumpter, AKA Rell, AKA Ruger, Maurice Curtis, AKA Mo, Tyquan Robinson, AKA Blacko, Tyreek Ogarro, AKA Reek, Ramal Curtis, AKA Rah, Darren Miller, AKA Dice, AKA Darren Thomas, Kelly Royster, AKA KK, Robert Rhodes, AKA Charlie, Kaemar Wilson, AKA K,

        *Defendants.*

_____

**FOR DEFENDANT-APPELLANT:** PATRICK J. JOYCE, Law Offices of Patrick Joyce, New York, NY.

**FOR APPELLEE:** MATTHEW J.C. HELLMAN, Assistant United States Attorney (Elinor L. Tarlow, Thomas McKay, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*, sitting by designation).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

A grand jury indicted Ernest Murphy and fourteen codefendants for offenses related to their participation in a drug crew that held territory in the Bedford-Stuyvesant neighborhood of Brooklyn. The fourteen codefendants all pled guilty, but Murphy went to trial. A jury found Murphy guilty of both charged counts: (1) conspiring to distribute at least 280 grams of cocaine base (crack cocaine) and a "detectable amount" of heroin, 21 U.S.C §§ 846, 841(b)(1)(A), 841(b)(1)(C), and (2) possessing a firearm in furtherance of the narcotics conspiracy, 18 U.S.C. §§ 924(c)(1)(A)(i), 2. The district court sentenced Murphy to 200 months' imprisonment on the first count and 60 months' imprisonment on the second court, to run consecutively. Murphy now appeals from that judgment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

1. Evidentiary Rulings

Murphy takes issue with two of the district court's evidentiary rulings, which we review for abuse of discretion. *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir. 2007). "To find such abuse, we must conclude that the challenged evidentiary rulings were arbitrary and

2

irrational." *Id.* at 307–08 (internal quotation marks omitted); *see also United States v. Figueroa*, 548 F.3d 222, 226–27 (2d Cir. 2008) (applying standard to Confrontation Clause rulings).

a. *2013 Firearm*

Murphy first argues that the district court abused its discretion by admitting evidence of a 2013 shooting of which Murphy was acquitted, evidence that Murphy contends is both irrelevant and prejudicial. *See* Fed. R. Evid. 402, 403. But the district court excluded nearly all of the evidence—and all of the *direct* evidence—of the 2013 shooting that the government sought to introduce, including ballistics, DNA, and the firearm itself. Murphy thus challenges only a single reference at trial to the firearm used in the 2013 shooting. Specifically, in 2018, police recorded two of the coconspirators discussing whether another coconspirator had "ratted" to law enforcement and whether the other conspirators, including Murphy, should "cut" him. During that discussion, the conspirators referenced a threat made by Murphy in 2013, prior to Murphy's involvement in the charged conspiracy, to "cut" another defendant, who had failed to carry out Murphy's order to retrieve the gun used in the 2013 shooting. The district court admitted the 2018 phone recording and, for context, allowed testimony from the cooperating witness ("CW") on two "narrow subjects": Murphy's "request that a co-defendant retrieve a firearm in 2013" and his "subsequent threat of repercussions after the co-defendant failed to do so." App'x at 295–96.

"We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged . . . or to explain the mutual trust that existed between coconspirators." *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993). And here, the testimony's probative value was not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The district court permitted only questioning that carefully avoided any implication about *why* Murphy wanted the gun—*i.e.*, the 2013 shooting of which he

was acquitted. The district court also clearly instructed the jury not to consider evidence of the 2013 firearm "as proof that the defendant has a criminal personality or bad character," App'x at 1413–14, and Murphy offers no reason to believe that the jury did not follow that instruction. *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions"). The admission of testimony contextualizing the 2018 phone recording was an appropriate exercise of the district court's discretion.

b. *Cooperating Witness's Juvenile Criminal History*

The government sought to preclude cross-examination of the CW about a sealed 2010 juvenile adjudication against him for rape and kidnapping (or aiding and abetting the same), an offense for which the underlying records had been partially destroyed. The district court agreed and precluded the line of questioning. Murphy contends that this violated his Sixth Amendment right to "confront[] . . . witnesses against him." U.S. Const. amend. VI.

Murphy argues that cross-examination on the juvenile adjudication would allow him to impeach the CW's character because the CW's version of the juvenile offense differs from the recitation of the facts in an unpublished opinion of the North Carolina Court of Appeals.[1] But the discrepancy between the recited facts and the CW's version supports the district court's ruling: as the district court noted, there is no way to know whether the CW is lying, so raising the issue of the adjudication would require a "mini trial" based on decade-old, half-destroyed records. App'x at 420. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things,

---

[1] It appears as if another juvenile, not the CW, was the defendant in the case appealed to the North Carolina Court of Appeals.

. . . confusion of the issues," and we find the limits set by the district court to be reasonable. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The district court properly exercised its discretion to exclude questioning about the 2010 juvenile adjudication.

## 2. Sufficiency of the Evidence

Murphy next argues that the jury had insufficient evidence from which to conclude that he conspired to distribute at least 280 grams of cocaine base. He originally raised this objection in a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, so we review the district court's denial of acquittal *de novo*. *See United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011). "The test for sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). In making this determination, we must "consider[] the evidence as a whole rather than piecemeal and view[] the evidence in the light most favorable to the government." *Id.* (citations omitted).

We agree with the district court that a reasonable jury could have found that Murphy conspired to distribute at least 280 grams of cocaine base. "The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly [and] (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him . . . ." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019). The CW testified that a single coconspirator, Tyshawn Burgess, would sell about 3.5 grams of crack per day during the period of the conspiracy. Thus, even if Murphy participated in the conspiracy for no more than the six months accounted for in the CW's testimony, the amounts distributed by Burgess alone would more than double the 280-gram threshold.

5

Taking the evidence in the light most favorable to the government, a reasonable jury could have found that sales surpassing 280 grams were reasonably foreseeable to Murphy. The CW's testimony established that Murphy supplied several members of the conspiracy with crack, visited the primary stash house on numerous occasions, and, at one point, kept at least 50 grams of a substance the jury could infer was crack at the stash house. Murphy thus had multiple ways of seeing the volume of drugs moved, and the evidence suggests that they moved at a rate that would easily exceed 280 grams in six months. *Cf. United States v. Richards*, 302 F.3d 58, 70 (2d Cir. 2002) (finding sufficient support for a drug quantity determination based on the defendant's "overall knowledge" of the drug operation). We conclude that sufficient evidence supports the jury's verdict that Murphy conspired to violate 21 U.S.C § 841(b)(1)(A).

3. Substantive Reasonableness of the Sentence

Finally, Murphy argues that his 260-month sentence, which was higher than any other coconspirator's, was substantively unreasonable because it improperly punished him for going to trial. "Our review of a sentence for substantive reasonableness is particularly deferential, and we will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (internal alteration and quotation marks omitted).

There is nothing shocking about Murphy's sentence, which is well below the combined Guidelines range of 322 to 387 months. *See United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015) ("While we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted in the overwhelming majority of cases and thus especially when, as here, a defendant challenges a *below*-Guidelines sentence." (internal quotation marks and

citation omitted)). Nor is it unsupportable as a matter of law. The district court expressly acknowledged that Murphy had a right to go to trial and was not penalizing him for exercising that right. Rather, the district court considered the codefendants' sentences among the many sentencing factors, while also acknowledging that, unlike Murphy, they had received "credit for acceptance of responsibility." App'x at 1976. We have repeatedly upheld this approach. *See, e.g.*, *United States v. Menendez*, 600 F.3d 263, 269 (2d Cir. 2010); *United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006); *United States v. Medina*, 607 F. App'x 60, 62 (2d Cir. 2015); *see also United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976) ("A show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial."). We thus conclude that Murphy failed to demonstrate that the sentence was substantively unreasonable.

We have considered Murphy's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court